UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Doreen Murdock, | **COMPLAINT FOR VIOLATION OF ERISA PLAN** |
| Plaintiff, | |
| v. | Civil Action No.: 1:14-CV-0010 (LEK/CFH) |
| WellPoint, Inc., | |
| Defendant. | |

The Plaintiff, DOREEN MURDOCK, by and through her attorneys, Latimer/Stroud, LLP, brings this action against the Defendant, WELLPOINT, INC., pursuant to the civil enforcement provisions of the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA").

## NATURE OF THIS ACTION

1. The Plaintiff brings this action against the Defendant for unlawful denial of benefits under §502(a)(1)(B) of ERISA, 29 U.S.C. §132(a)(1)(B). Specifically, the Plaintiff alleges that the Defendant's decision to deny her benefits violates the terms of the Defendant's short-term disability plan and thus constitutes an abuse of discretion under the arbitrary and capricious standard of review.

2. The Plaintiff seeks a declaration that she is entitled to benefits under the Defendant's short-term disability plan and that the Defendant must comply with its plan terms and fulfill its duty to provide her with such benefits. In addition to a retroactive award of benefits with interest, the Plaintiff also seeks injunctive relief, reasonable attorney's fees, costs, and such other and further relief as the Court deems just and proper, considering the Defendant's unlawful

1

conduct.

## JURSIDICTION AND VENUE

3. Because this action raises a federal question, this Court has jurisdiction, pursuant to 29 U.S.C. §1131. This Court also has jurisdiction to hear this case under §502(e)(1) and §502(f) of ERISA.

4. Venue in this judicial district is proper, as provided for in §502(e)(2) of ERISA.

## PARTIES

5. The Defendant is a medical service provider that currently serves more than sixty-seven (67) million people in a number of capacities, including thirty-six (36) million people who are enrolled in the Defendant's health insurance plans. The Defendant has forty-six thousand (46,000) employees and is publicly traded on the New York Stock Exchange. Its annual revenue has quadrupled each year since 2010, reaching nearly sixty-two (62) billion dollars in 2012. The Defendant has its headquarters in Indianapolis, Indiana and is qualified and registered to transact business in New York. It has such extensive contacts within this judicial district that it "may be found" in this district within the meaning of §502(e)(2) of ERISA. The Defendant is also an "employee benefit plan" within meaning of ERISA.

6. The Plaintiff is an adult resident of Niskayuna, New York, which is within this federal judicial district. The Plaintiff has worked for the Defendant since 2008, and she received health insurance benefits through the Defendant until September 2013, when she could no longer afford the coverage.

## FACTUAL ALLEGATIONS

7. The Plaintiff's job title is Senior Case Manager/Nurse, and her duties center around developing health care programs for oncology patients. Patients are assigned to her

2

randomly through a pool system, and, once assigned, the Plaintiff must contact the patient, obtain extensive information and documentation, and complete a treatment assessment within a short amount of time. The Plaintiff's quality assurance percentage must also remain at or above ninety-five percent (95%).

8. The Plaintiff suffers from a number of medical conditions and has so suffered for many years. Her ailments include, but are not limited to, fibromyalgia, chronic migraines, cervical spondylosis, chronic neck pain, bursitis of the bilateral hips, and both osteoarthritis and rheumatoid arthritis, which have required two (2) surgical surgeries, the last in June 2013. These impairments cause the Plaintiff to experience many unpleasant side effects, including, most notably, numbness, tingling, and weakness in her upper and lower extremities, joint stiffness and aching, shaking and tremors in her hands, difficulty swallowing, shortness of breath, chronic fatigue, and general clumsiness (i.e. tripping, falling, and dropping items).

9. The Plaintiff is treated by a number of health care professionals, including three (3) physicians, an adult nurse practitioner, and three (3) physician assistants. In summer 2013, the Plaintiff was prescribed Plaquenil and steroids to help alleviate her worsening symptoms; however, she was advised that she would need to be on the regimen for approximately ten (10) weeks before complete effectiveness could be assessed. Her providers advised her that, if the regimen was not determined to be effective after the ten (10) week trial period, they could consider Humira or Enbrel as alternative treatment options. Before she could be prescribed either of those medications, however, the Plaintiff would first have to undergo testing to rule out a diagnosis of Multiple Sclerosis.

10. The Plaintiff's job has always involved constant, repetitive movements (i.e. typing and writing) and time constrained conditions; in summer 2013, however, her job duties

changed dramatically when the Defendant restructured the computer system that its employees were required to use. Whereas the Plaintiff previously worked on one (1) laptop computer, the upgrade forced her to use a two (2) screen processing system. This change resulted in much more data input, which translated into additional time spent on each case and less time for shifting positions and/or taking breaks when her pain became intolerable. Additionally, the two (2) screen system caused more strain on the Plaintiff's neck, as she was forced to look between two (2) screens and the keyboard and work over a much larger surface area.

11. The wait time pending the results of the Plaintiff's pain management regimen and the dramatic change in her job process further exacerbated her symptoms until, on June 25, 2013, the Plaintiff notified the Defendant's Leave of Absence Department that she was requesting leave from work and short-term disability benefits for the period of July 2, 2013 through August 29, 2013. The Plaintiff provided medical records from all of her treating sources to support her request.

12. The Defendant's short-term disability plan, effective January 1, 2013, states:

> Criteria for Benefits: To receive benefits under the Plan, a Participant must have a non-work related total disability that lasts at least eight full consecutive days... A total disability is a medical or behavioral condition which renders the Participant unable to perform substantially all of the essential functions or his or her job, and which began when the participant was engaging in Active Employment and was covered under the Plan... To substantiate the necessity and anticipated duration of the leave, medical certification is required from an Authorized Health Care Provider who is treating the Participant for the condition for which the benefits are requested...

13. The Plaintiff's leave was approved, but, on July 24, 2013, she was denied benefits on the basis that the documentation she had submitted did not support that she had a total disability from performing the essential functions of her job. Specifically, it was found that the Plaintiff's doctors indicated that, at specific appointments in the time prior to her application, she

4

was had been determined to be in no acute distress, had some diffuse swelling but no specific synovitis, had good grip strength and fist closure, had full range of motion in her wrists and elbows, and had almost full range of motion in her well healed right shoulder rotator cuff.

14. On July 24, 2013, the Plaintiff appealed the denial. In her supporting paperwork, she stated that her medical providers had specifically told her not to sit for any length of time, which her job in and of itself required, and that she was prescribed muscle relaxers to be taken on a constant basis, which left her unable to mentally process. She also stated that typing caused aching in her fingers and burning in her shoulders and neck and that, due to stiffness, it took her more than one (1) hour each morning to get out of bed.

15. A review was conducted by a clinical consultant employed by the Defendant on August 15, 2103. Said review concluded that the medical documentation presented did not support a total disability. The denial of short-term disability benefits was thus upheld on the first level appeal on August 29, 2013. The affirmance again stressed that the Plaintiff's medical records had shown that she was not in acute distress during one (1) particular appointment and that she had mentioned that she had been experiencing worsening depression and family issues involving her mother.

16. On September 17, 2013, the Plaintiff's attorneys, Latimer/Stroud, LLP, submitted a request for a second level appeal on the basis that the clinical consultant had failed to examine the Plaintiff's specific job duties and work environment and the changes that both had recently undergone. For example, the clinical consultant found that the Plaintiff could alleviate her pain and discomfort by taking breaks to periodically walk around; however, the clinical consultant considered neither the extreme time constraints and quality assurance requirements that the Plaintiff works under nor that the new processing system requires more time to assess each

patient, leaving the Plaintiff with even more intense time constraints and less time for breaks. The appeal argued that the Plaintiff's essential work duties are sitting, typing, and looking between two (2) screens and a keyboard, which she can no longer substantially do.

17. Although benefits were denied, the Plaintiff was approved for continuous, unpaid leave through September 23, 2013. The Plaintiff then requested continuous leave through December 28, 2013. This request was denied on October 24, 2013.

18. In addition, the Plaintiff applied for disability benefits through New York State. Although initially denied, she appealed to the Worker's Compensation Board and was awarded benefits by the Administrative Law Judge.

19. In addition, on December 20, 2013, the Plaintiff was approved for long-term disability benefits under a similar policy administered by Anthem Life, which is a subsidiary of the Defendant.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST THE DEFENDANT UNDER THE CIVIL ENFORCEMENT PROVISIONS OF ERISA:

20. The Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 19 with the same force and effect as if forth set fully herein.

21. The Defendant's denial of short-term disability benefits is actionable by the Plaintiff under §501(a)(1)(B) of ERISA, which allows a private citizen to bring a civil action to enforce her rights under the terms of a short-term disability plan and recover benefits owed to her.

22. By taking the actions described above, the Defendant violated the Plaintiff's right to short-term disability benefits guaranteed by the plan's governing documents when a medical condition renders an employee unable to perform substantially all of the essential functions of

her job and the same is substantiated by a treating health care provider. The Plaintiff had a proper claim for benefits, she was denied benefits, she exhausted all administrative rights of appeal, and she is now entitled to benefits.

23. Additionally, a private citizen suing under this provision is entitled to interest on any retroactive amount awarded, as well as reasonable attorney's fees and costs incurred to institute the action. Pursuant to §502(a)(3) of ERISA, a private citizen who is wrongfully withheld benefits is also entitled to an injunction to keep her benefits in place, and/or a surcharge or other equitable relief to remedy the violations of the terms of the short-term disability plan.

### PRYAER FOR RELIEF

WHEREFORE, the Plaintiff, DOREEN MURDOCK, demands judgment against the Defendant, WELLPOINT, INC., as follows:

A. Declaring that the Plaintiff is entitled to benefits under the Defendant's short-term disability plan; and further

B. Ordering that the Defendant must comply with the terms of its short-term disability plan and fulfill its duty to provide the Plaintiff with benefits; and further

C. Awarding the Plaintiff such benefits, pursuant to the terms of the short-term disability plan, plus interest, as necessary to restore her to the position in which she would and should have been in but for the Defendant's contractual and statutory violations; and further

D. Enjoining the Defendant, preliminarily and permanently, from denying benefits it is obligated to provide under the terms of its short-term disability plan; and further

E. Awarding the Plaintiff reasonable attorney's fees and costs incurred to institute this action; and further

F. Granting such other and further relief, including equitable relief, as this Court deems just and proper to remedy the violations of the terms of the short-term disability plan.

Dated: December 30, 2013

Yours, etc.

*[signature]*

Nancy E. Stroud, Esq.
Latimer/Stroud, LLP
Attorneys for the Plaintiff
951 Albany Shaker Road, Suite 100
Latham, New York 12110
Telephone: (518) 785-9702
Facsimile: (518) 785-9705
Bar Role: 509 713

**VERIFICATION**

STATE OF NEW YORK )
COUNTY OF ALBANY ) S.S.:

DOREEN MURDOCK, being duly sworn, deposes and says that deponent is the Plaintiff in the within action; that deponent has read the foregoing verified complaint and knows the contents thereof; that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged on information and belief and that, as to those matters, deponent believes them to be true.

*[signature]*
DOREEN MURDOCK

Sworn to before me this
30th day of December 2013

*[signature]*
Notary Public
NANCY E. STROUD
Notary Public, State of New York
No. 02ST6242804
Qualified in Saratoga County
Commission Expires June 13, 2015

8